```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
SONJA KINGSLEY,                                       :
                                                      :
                              Plaintiff,              :     16 Civ. 169 (KPF)
                                                      :
                       v.                             :     OPINION AND ORDER
                                                      :
NEW YORK CITY HOUSING AUTHORITY                       :
(NYCHA), CLARENCE GORDON, ASHOK                       :
KULKARNI, JOHN DOE 1, JOHN DOE 2,                     :
and MIXED FINANCE,                                    :
                                                      :
                              Defendants.             :
                                                      :
-------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 6, 2016
```

KATHERINE POLK FAILLA, District Judge:

On January 7, 2016, Plaintiff Sonja Kingsley ("Kingsley" or "Plaintiff"), proceeding *pro se*, initiated this action against the New York City Housing Authority ("NYCHA") and Mixed Finance, in addition to individual Defendants Clarence Gordon ("Gordon") and Ashok Kulkarni ("Kulkarni") of the Amsterdam Houses' Management Office, and two John Does (collectively, "Defendants"). Plaintiff asserts "violations of federal housing laws" relating to Defendants' alleged (i) failure to make repairs to her apartment; (ii) addition of unexplained fees to her rent bill; and (iii) failure to follow proper rent grievance procedures. Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), contending that the Court lacks subject matter jurisdiction over Plaintiff's claims, either because Plaintiff has failed to allege facts on which federal jurisdiction can be predicated or because this Court should abstain

from deciding Plaintiff's claims. For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND[1]

### A. Factual Background

At the time she filed her Complaint, Plaintiff was a resident of the Amsterdam Houses, a housing development in Manhattan under the purview of NYCHA, a New York State agency. (Compl. 3). Between 2013 and the time of filing, Plaintiff asserts, Defendants committed "violation[s] of federal housing laws," including by: (i) failing to abate mold in Plaintiff's bathroom and walls, in violation of a settlement agreement in *Baez* v. *New York City Housing Authority*, No. 13 Civ. 8916 (WHP); (ii) failing to make other necessary repairs to Plaintiff's apartment, including to her broken front door, and attempting to evict Plaintiff for withholding rent in response; (iii) adding "unexplainable 3 digit fees" to Plaintiff's rent on a monthly basis; (iv) inflating Plaintiff's reported salary in an effort to extract higher rent; and (v) failing to "follow proper procedure to allow plaintiff to bring a rent grievance" proceeding. (Compl. 2-3). Plaintiff states that Defendants' inaction with regard to repairs led to a "[g]ross violation of [the] warranty of habitability," and that Defendants' failure to repair

---

[1] The facts throughout are drawn, as they must be in a motion to dismiss, from the Complaint. ("Compl.," Dkt. #2). *Kelly* v. *Howard I. Shapiro & Assocs. Consulting Eng'rs*, 716 F.3d 10, 12 (2d Cir. 2013). For convenience, Defendants' motion to dismiss is referred to as "Def. Br." (Dkt. #38-42); Plaintiff's response in opposition as "Pl. Opp." (Dkt. #47); and Defendants' reply papers as "Def. Reply" (Dkt. #48), all reflecting the pagination imposed by the Court's electronic filing system. The Declaration of Jane E. Lippman in support of Defendants' motion to dismiss (Dkt. #40), will be referred to as "Lippman Decl."

her door in a timely manner allowed outsiders to enter Plaintiff's apartment. (*Id.* at 3).

Plaintiff now seeks various forms of relief that include: (i) completion of outstanding repairs; (ii) return of rent money paid since 2013; (iii) "proper calculation of [her] rent"; and (iv) "an investigation into the[] 3 digit fees" that have appeared on her rent bills. (Compl. 4).

## B. Procedural Background

Plaintiff filed the Complaint in this action on January 7, 2016. (Dkt. #2). On February 29, 2016, Plaintiff filed a motion "to stop disputed rent and unexplained fees and eviction from Housing Court" (Dkt. #6, 12), seeking a Temporary Restraining Order to enjoin an action brought in Housing Court by NYCHA for non-payment of rent. Defendants opposed the motion on March 1, 2016, contending that any such injunction would be barred by the Anti-Injunction Act, 28 U.S.C. § 2283. (Dkt. #9, 13-14). In their opposition papers, Defendants also requested a conference in anticipation of their motion to dismiss. (Dkt. #13-14). The Court denied Plaintiff's motion for a Temporary Restraining Order on March 4, 2016 (Dkt. #15), and held a conference on Defendants' proposed motion to dismiss on March 15, 2016 (Dkt. #34).

Defendants filed their motion to dismiss on April 28, 2016 (Dkt. #38-42), to which Plaintiff filed a response in opposition on June 28, 2016 (Dkt. #47). Defendants then filed a letter brief in reply on June 29, 2016 (Dkt. #48), concluding briefing on the motion.

## DISCUSSION

### A. Applicable Law

#### 1. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Aurecchione* v. *Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks omitted); *accord Sokolowski* v. *Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013). A "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000).

"Subject-matter jurisdiction is a threshold issue that must be addressed prior to the merits." *Allen* v. *N.Y.C. Hous. Auth.*, No. 15 Civ. 173 (ALC), 2016 WL 722186, at *4 (S.D.N.Y. Feb. 19, 2016). "Federal question jurisdiction exists where a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Greenberg* v. *Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d Cir. 2000) (quoting *Franchise Tax Bd.* v. *Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27-28 (1983)), *overruled on other grounds, Doscher* v. *Sea Port Grp. Secs., LLC*, — F.3d —, 2016 WL 4245427 (2d Cir. Aug. 11, 2016).

In resolving a Rule 12(b)(1) motion to dismiss, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in

favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing [may] not [be] made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citation and quotation marks omitted). Moreover, where subject matter jurisdiction is contested, a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits. *See Zappia Middle East Constr. Co.* v. *Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *accord Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

### 2. *Colorado River* Abstention Doctrine

As an alternative basis for dismissal, Defendants argue that the Court should abstain in favor of an earlier-filed New York State Supreme Court proceeding.[2] "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction.'" *Colo. River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan* v. *Carland*, 217 U.S. 268, 282 (1910)). As the *Colorado River* Court explained, "[t]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colo. River*, 424 U.S. at 813

---

[2] "A motion to dismiss based on the abstention doctrine is also considered as a motion made pursuant to Rule 12(b)(1)." *City of N.Y.* v. *Milhelm Attea & Bros.*, 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008).

5

(quoting *County of Allegheny* v. *Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)).

"Pursuant to *Colorado River* abstention, a district court may stay or dismiss a party's claims only where [i] the relevant state and federal actions are 'parallel' and [ii] an evaluation of a six-factor test weighs in favor of abstention." *First Keystone Consultants, Inc.* v. *Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 182 (E.D.N.Y. 2012). "Lawsuits are considered 'parallel' if 'substantially the same parties are contemporaneously litigating substantially the same issue' in both forums." *First Keystone*, 862 F. Supp. 2d at 182 (quoting *Dittmer* v. *County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). Further, a court must determine that there is "a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Stone* v. *Patchett*, No. 08 Civ. 5171 (RPP), 2009 WL 1108596, at *14 (S.D.N.Y. Apr. 23, 2009) (internal citation omitted) (emphasis in original).

Upon a determination that the actions are parallel, a district court proceeds to consider six factors:

> [i] whether the controversy involves a res over which one of the courts has assumed jurisdiction; [ii] whether the federal forum is less inconvenient than the other for the parties; [iii] whether staying or dismissing the federal action will avoid piecemeal litigation; [iv] the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; [v] whether federal law provides the rule of decision; and [vi] whether the state procedures are adequate to protect the plaintiff's federal rights.

6

*First Keystone*, 862 F. Supp. 2d at 185.  While "[n]o single factor is necessarily decisive," *Vill. of Westfield* v. *Welch's*, 170 F.3d 116, 121 (2d Cir. 1999) (internal quotation marks and citations omitted), "[u]ltimately, the decision of whether to stay or dismiss the federal suit under Colorado River abstention lies within the court's discretion," *First Keystone*, 862 F. Supp. 2d at 185 (citing *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983)).

### 3. Pro Se Parties

It is well established that "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *accord McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).  "That said, the liberal pleading standard accorded to *pro se* litigants is not without limits, and all normal rules of pleading are not absolutely suspended." *Hill* v. *City of New York*, No. 13 Civ. 8901 (KPF), 2015 WL 246359, at *2 (S.D.N.Y. Jan. 20, 2015) (internal quotation marks omitted).

## B. Analysis

### 1. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims

In their motion to dismiss, Defendants contend that Plaintiff's claims do not arise under any federal law, and, accordingly, the Court lacks subject matter jurisdiction.  As Defendants assert, Plaintiff alleges "violation of federal housing laws," but fails to substantiate this assertion with any factual

7

allegations supporting subject matter jurisdiction. (Def. Br. 5). As noted, because Defendants move under Rule 12(b)(1), the Court may look to documents outside the Complaint to determine the existence *vel non* of subject matter jurisdiction. *See Zappia Middle East Constr. Co.*, 215 F.3d at 253. While the Court concurs that Plaintiff's Complaint did not specify the basis for her assertion that violations of federal law took place, given the deference shown to *pro se* plaintiffs, the Court nonetheless examines the possible grounds for federal jurisdiction raised by Plaintiff's Complaint and filings.

### a. Plaintiff's Claims Arise Under New York State Law

At the outset, the Court observes that Plaintiff's claims against Defendants relating to apartment repairs and mold issues sound in state law claims of tort and breach of contract. *See, e.g., Park W. Mgmt. Corp.* v. *Mitchell*, 47 N.Y.2d 316, 325 (1979) (finding that under New York law, "[a] residential lease is now effectively deemed a sale of shelter and services by the landlord who impliedly warrants: first, that the premises are fit for human habitation; second, that the condition of the premises is in accord with the uses reasonably intended by the parties; and, third, that the tenants are not subjected to any conditions endangering or detrimental to their life, health or safety"); *see also* N.Y. Real Property Law § 235-b (Warranty of Habitability). Along the same lines, "[a] tenant seeking to recover from his or her landlord for personal injuries sustained as a result of a defect in the apartment must rely upon traditional theories of tort liability," though a tenant may also "maintain a cause of action for breach of the implied warranty of habitability under a theory

of breach of contract." *German* v. *Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 568 (S.D.N.Y. 1995); *see also Shin* v. *Oikos Dev. LLC*, No. 14 Civ. 4133 (SLT) (LB), 2014 WL 3547032, at *2 (E.D.N.Y. July 15, 2014) (finding that a plaintiff's claims of mold and gas exposure arose under state law).[3]

Similarly, Plaintiff's disputes as to her rent increases, the unexplained three-digit fees added to her rent, and Defendants' failure to abide by rent grievance procedures sound in breaches of contract under state law. *See, e.g., K-Bay Plaza, LLC* v. *Kmart Corp.*, 19 N.Y.S.3d 32, 36 (1st Dep't 2015) (noting that in a prior Appellate Division case, that court "squarely held that a claim for breach of contract based on an allegedly erroneous computation of rent accrues upon the first use of that computational methodology" (citing *Goldman Copeland Assoc.* v. *Goodstein Bros. & Co.*, 702 N.Y.S.2d 269, 270 (1st Dep't 2000))).

Indeed, Plaintiff brought these very claims in her New York State Supreme Court action against Defendants, and would thus be hard-pressed to argue that they may only be addressed in federal court. (*See generally* Lippman Decl. Ex. C (Plaintiff's Complaint against Defendants NYCHA and

---

[3] Alternatively, to the extent Plaintiff's claims are interpreted as ones "seeking to invoke the review standard provided under … Article 78 of [New York's] Civil Practice Law and Rules, which permits review of administrative actions by the New York State Supreme Court on abuse of discretion and substantial evidence grounds," such claims "must be dismissed for lack of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims." *Blatch ex rel. Clay* v. *Hernandez*, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) (citing *Cartagena* v. *City of N.Y.*, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003)).

Kulkarni in New York State Supreme Court)).  That said, the Court has considered several potential bases for federal jurisdiction.

> **b.     Mixed Finance Is Not a Federal Agency Whose Appearance as a Defendant Might Confer Federal Jurisdiction on Plaintiff's Case**

At the Court's pre-motion conference, Plaintiff explained that for the Amsterdam Houses development where she resided, "the bureau management [was] something called Mixed Finance," named here as a Defendant, which was "a federal agency."  (*See* Dkt. #34 at 5-6; *see also id.* at 19 (Plaintiff's assertion that "Mixed Finance is a federal agency.")).  In her opposition papers, however, Plaintiff states that it is "[u]nknown who the real owners of Amsterdam Houses are," as that development "is a part of the federalized city and state developments supposedly sold to a non-profit company [ ] but NYCHA has [a] controlling interest and the task of maintaining repairs and collecting rent for Amsterdam Houses."  (Pl. Opp. 1).  In support of her contention that the Amsterdam Houses are "part of [a] federalized" development, Plaintiff appends one page of a 2010 article referencing the federal government's decision to "federalize" 21 New York City housing developments, which would then be sold to non-profit affiliates; the article called this the "Mixed-Finance Moderation plan," though it did not mention the Amsterdam Houses.  (*See id.* Ex. 1).  As Defendants note in reply, however, the article acknowledges that NYCHA retained the controlling stake in all of these developments.  (Def. Reply 1-2).

During the parties' pre-motion conference, Defendants countered Plaintiff's suggestion that Mixed Finance was a federal agency governing the

Amsterdam Houses, noting instead that it was "a division within NYCHA." (Dkt. #34 at 20-21).  Further, in a declaration submitted in conjunction with their motion, Defendants confirmed that Mixed Finance "is part of NYCHA's Operations Department and is not a suable entity separate and apart[] from NYCHA."  (Lippman Decl. ¶ 2; *see also id.* Ex. A (organizational chart denoting "Mixed Finance" as an entity within NYCHA)).

Because the Court may, on a motion under Rule 12(b)(1), look to evidence outside the pleadings, including affidavits and exhibits, it determines, based on the Lippman Declaration and the NYCHA organizational chart, that Mixed Finance is an entity within NYCHA, a state agency.  As Plaintiff has failed to rebut this evidence, Plaintiff's naming of Mixed Finance as a Defendant does not suffice to give this Court federal subject matter jurisdiction.

      **c.**    **Plaintiff's Reference to the *Baez* Settlement Does Not Confer Federal Jurisdiction on Her Claims**

In her Complaint, Plaintiff asserted that "NYCHA did not plaster [her] moldy bathroom ceiling and walls in violation of [the] federal court agreement" in *Baez* v. *New York City Housing Authority*, No. 13 Civ. 8916 (WHP). (Compl. 3).  In their motion to dismiss, Defendants contend that *Baez* does not confer federal jurisdiction, as that matter was an unrelated class action on behalf of NYCHA residents alleging "exacerbation of their asthma conditions due to mold," and was resolved by Stipulation and Order of Settlement in 2013. (Def. Br. 5).  As Defendants explain, that agreement "d[id] not provide for a separate cause of action for violation of the Stipulation." (*Id.*).  Moreover,

11

Plaintiff could not legally hold NYCHA in contempt for violation of the Settlement, as such contempt application would have to be brought in the *Baez* action, rather than "as a separate and independent proceeding in a different matter." (*Id.* at 5-6). In opposition, Plaintiff disagrees generally with Defendants' argument and states that she is thus "making her own separate complaint about the falling plastering, the urine dripping onto her toilet from the toilet in the apartment directly above hers and the roaches." (Pl. Opp. 3).

While the Court is disturbed by Plaintiff's factual allegations, which it accepts as true for purposes of this motion, it agrees with Defendants that Plaintiff cannot rely on *Baez* for federal subject matter jurisdiction. At the outset, the *Baez* class was certified as "[c]urrent and future residents of NYCHA who have asthma that substantially limits a major life activity and who have mold and/or excessive moisture in their NYCHA housing." (Lippman Decl. Ex. H at 4). Plaintiff has not demonstrated that she met the criteria to be a member of that class. More importantly, the settlement agreement in *Baez* provided that the presiding judge would "retain jurisdiction over [the] Stipulation and Order for thirty (30) or thirty-six (36) months … for the purpose of modification and enforcement," after which the settlement agreement would cease to have any effect, barring enumerated circumstances, not including those here. (*Id.* at 10-11). Accordingly, that settlement agreement did not provide for a separate cause of action, outside of that court and matter, in which to allege violations of the agreement. In any event, as Defendants point out, Plaintiff could not "seek to have this Court hold NYCHA in contempt for

12

failing to comply with that Stipulation, as a contempt application must be brought in that action and not as a separate and independent proceeding in a different matter." (Def. Br. 5-6 (citing *Gompers* v. *Bucks Stove & Range Co.*, 221 U.S. 418, 444-45 (1911) ("Proceedings for civil contempt are between the original parties and are instituted and tried as a part of the main cause."))).

Further, the Court observes that the settlement agreement in *Baez* cited violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Fair Housing Amendments Act as grounds for the suit. (Lippman Decl. Ex. H at 1-2). However, none of those grounds applies in this case, as Plaintiff has not alleged that she was discriminated against or treated differently on the basis of a disability or other protected characteristic, as required under those statutes. *See* 42 U.S.C. § 12132 (ADA prohibition on discrimination by public entities against individuals with disabilities); 29 U.S.C. § 794 (Rehabilitation Act prohibition on discrimination against individuals with disabilities by programs or activities receiving federal funding); 42 U.S.C. § 3604 (Fair Housing Act prohibition on discrimination in sale or rental of housing on the basis of race, color, religion, sex, handicap, familial status, or national origin).[4] Thus, while Plaintiff conceivably could — and, in fact, did — bring a state court

---

[4] Along the same lines, as Plaintiff has not alleged discriminatory policies, her claims also cannot be construed to allege a Fourteenth Amendment Equal Protection violation. *See Marchant* v. *N.Y.C. Bd. of Elections*, 815 F. Supp. 2d 568, 580 (E.D.N.Y. 2011) ("To establish a constitutional violation under the Equal Protection Clause, plaintiffs must show that a state actor intentionally discriminated against them, either by adopting out of [discriminatory] animus policies which are facially neutral but have a … discriminatory effect, or by applying a facially neutral policy in a … discriminatory manner.").

13

action against NYCHA for failing to remedy mold issues in her apartment, she cannot sustain federal subject matter jurisdiction based on a class action settlement agreement with NYCHA in a separate federal case.

### d. Plaintiff's Relocation to California Does Not Give Rise to Diversity Jurisdiction

Finally, the Court takes note of Plaintiff's statement, in her opposition papers, that she is "now a permanent resident of the state of California." (Pl. Opp. 1). Although Plaintiff does not raise it as a ground for federal jurisdiction, the Court concurs with Defendants' assertion that "Plaintiff's move to California does not create diversity jurisdiction under 28 U.S.C. Section [1332]." (Def. Reply 1). *See also Linardos* v. *Fortuna,* 157 F.3d 945, 947 (2d Cir. 1998) ("It is hornbook law that the question of whether federal diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced." (internal quotation marks and alterations omitted)). In any event, Plaintiff has not alleged an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332. Thus, Plaintiff has failed to establish federal jurisdiction for her Complaint, and the Court has identified no grounds on which such jurisdiction could be sustained.

### 2. Even If the Court Has Subject Matter Jurisdiction, *Colorado River* Abstention Is Warranted

As Defendants argue, even if the Court were to determine that Plaintiff has adequately established federal subject matter jurisdiction, principles of abstention counsel in favor of this Court's dismissal. (Def. Br. 3, 6-7). Defendants contend that the claims encompassed in Plaintiff's instant

Complaint are parallel to those in her plenary action against NYCHA and Kulkarni in New York State Supreme Court; the "essential allegations" include Plaintiff's complaints about untimely or outstanding repairs and erroneous calculation of her rent. (*Id.* at 7).

The Court concurs. An examination of Plaintiff's State Supreme Court complaint reveals that she brings claims regarding (i) failure to abate mold issues in her bathroom ceiling and walls, including a reference to the *Baez* settlement (Lippman Decl. Ex. C at ¶¶ 3-4, 11); (ii) damage to and subsequent non-repair of her front door (*id.* at ¶¶ 5, 7-8); (iii) NYCHA's attempt to evict Plaintiff for withholding rent in response to delayed repairs (*id.* at ¶ 6); and (iv) the disputed three-digit fees that appeared on Plaintiff's rent bills, along with Defendants' inflation of her salary in an effort to increase her rent (*id.* at ¶ 7). Thus, Plaintiff's State Supreme Court action amounts to "substantially the same parties [ ] contemporaneously litigating substantially the same issue[s]" as this matter, *see First Keystone*, 862 F. Supp. 2d at 182 (internal quotation marks omitted), and the two actions are parallel. Further, the Court finds there is "a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Stone*, 2009 WL 1108596, at *14 (emphasis in original).

With regard to the factors then examined under *Colorado River*, Defendants assert that: (i) Plaintiff's claims are better addressed in New York State Supreme Court and Housing Court, as those "trial courts [have] the greatest experience reviewing NYCHA's administrative decisions via CPLR

Article 78 proceedings, applying New York tort and contract law, and deciding non-payment proceedings"; whereas (ii) this Court would be required to apply New York law, and its resolution of the matter would risk inconsistent results with Plaintiff's parallel proceeding; and (iii) "there is no reason to believe Plaintiff's rights would not be adequately protected" in her parallel proceeding in New York State Supreme Court. (Def. Br. 7).

Again, the Court agrees. While the first *Colorado River* factor — assumption of jurisdiction over any res or property by either court — is neutral, a majority of the remaining factors weigh in favor of abstention by this Court. Specifically, Plaintiff's parallel State Supreme Court Action was commenced on May 28, 2015 (Lippman Decl. Ex. C), whereas the instant Complaint was filed more than seven months later, on January 7, 2016 (Dkt. #2). Given the clear overlap in all issues raised in both cases, simultaneous adjudication would risk inconsistent outcomes and clearly would constitute "piecemeal litigation." *See First Keystone*, 862 F. Supp. 2d at 185. Moreover, as noted, New York law "provides the rule of decision," and the Court sees no indication that Plaintiff's rights will not be protected adequately in a New York State Supreme Court proceeding, should she choose to pursue it. *Id.*

As such, the large majority of the *Colorado River* factors weigh heavily in favor of this Court's abstention, and while recognizing that such abstention is an "extraordinary and narrow exception," *Colorado River*, 424 U.S. at 813, the Court deems it appropriate given the identity of claims in Plaintiff's two cases and the applicability of state law to these claims. Accordingly, even if the Court

16

were to conclude that Plaintiff had adequately established subject matter jurisdiction, it would abstain from proceeding further with Plaintiff's federal case under the principles set forth in *Colorado River*.

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED in full. Because the Court dismisses Plaintiff's Complaint for lack of subject matter jurisdiction, the Court will not grant Plaintiff leave to file an Amended Complaint, as repleading would be futile. *See Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2000). Accordingly, the Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: October 6, 2016
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to:*

Sonja Kingsley
9508 Cedar Street
Bellflower, CA 90706